UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:13CV-10-M

CECIL WALKER SALYERS, JR.
AKA WALLY SALYERS                                                                PLAINTIFF

v.

DAVID G. MASSAMORE *et al.*                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Cecil Walker Salyers, Jr., filed a *pro se* complaint under 42 U.S.C. § 1983. This matter is now before the Court on the initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will allow Plaintiff's claims concerning his alleged denial of religious services and medical treatment to proceed for further development and dismiss the remaining claims.

### I.

Plaintiff is an inmate at the Hopkins County Detention Center (HCDC). He sues David G. Massamore, whom he identifies as the "Lead Prosecuting Attorney," in his individual and official capacity; Joe Blue, the HCDC Jailer, in his official capacity; Scott Gibson, a Madisonville Police Department officer, in his individual and official capacity; and Advanced Correctional Healthcare (ACH), which he identifies as being "contracted as Medical Staff and Physician" at HCDC, in its official capacity.

Plaintiff states that Defendant Massamore denied him the right to a trial by jury and right to a speedy trial, which shows "tactics" by the Commonwealth to "cause the defendants to 'plea out' rather than stem the course of a trial." He states that he has been incarcerated since December 2010 and was indicted in January 2011 but has not been brought to trial despite his requests for a speedy trial. He states that he is also entitled to a change of venue. He states that

when he was arraigned his bail was set at $50,000 but was lowered to $25,000 when he appeared before the Court. He states that this constitutes excessive bail. Plaintiff also claims that he was subjected to cruel and unusual punishment in that he has had a severe illness, was put into segregation, had to bear insults from other inmates and jail staff, denied access to counsel, felt anxiety, and denied access to religious activities by jail officials. Plaintiff also alleges that "the Commonwealth has knowingly allowed the libelous, malicious, and fraudulent information to be published" in the local newspaper and on tv, the radio, and the internet. He states that this was done to force him into a plea agreement and that it raises doubt about seating a fair and impartial jury.

In regards to Defendant Blue, whom he describes as "representing the Hopkins County Detention Center," Plaintiff alleges "cruel punishment" in that he had experienced two heart attacks before entering HCDC and that it "was still an on going issue." He states that he was "forced into isolation and segregation" for over a year and a half "without due cause, then forced into protective custody classification" by HCDC employees. In isolation, Plaintiff states that he was denied the use of a jail library, outside recreation, church services, and "the use of a telephone for 23 hours a day 7 days a week." He states that he was denied "regular access to legal counsel due to the phone issue" and denied "spiritual counseling, church, the Great Banquet, Communion, etc." He said this created stress, emotional pain, and mental anguish. He states that he was "then placed into protective custody which in itself is an embarrassment but then paraded through out the jail . . . ." Plaintiff further states that Defendant Blue "knowingly allows practices, by [HCDC] employees, and those under the HCDC Guidelines that place the

defendant, namely me, in harms way by denying and/or prohibiting [Plaintiff] from seeking medical treatment and /or relief."

Plaintiff states HCDC contracts with ACH. He states that a doctor from ACH is his primary care physician and is the person to whom the medical staff report. He states that the jail refuses to give him the doctor's name. He states that the medical staff "was made aware of my severe physical illness, 2 heart attacks," which occurred prior to his incarceration. He states that this condition was still "being treated as a life threatening issue" when he became incarcerated. He states that he had been prescribed four medications, which he understood that his "life was totally dependant" on taking. He states that although he informed the medical staff of his need for the medications, specifically Plavix, "I was told by medical staff that I would 'NEVER' see the day that the jail would furnish any of the prescribed medication much less Plavix." He was told that, if he had someone purchase the medications for him outside the jail, that jail staff would administer the medications to him at a charge above the cost of the medications.

Plaintiff further states that he developed a hernia in his groin on October 19, 2011. He was seen by medical staff who referred him to a doctor. He saw a doctor on November 2, 2011, who confirmed that it was a hernia. However, Plaintiff was told that "I could not receive treatment for it at the jail and never would. That, I quote, they don't fix hernias any more, but if I was to go state (take a plea) then I would be shipped to K.S.R. and they would perform the surgery and the treatment required." He states that for almost a year, he "endured the pain and suffering of the hernia getting stuck on a daily basis, having to push on it, sometime for hours, to put it back in place to relieve the pain. At times the pain was excruciating." Plaintiff states that on October 13, 2012, the hernia "got stuck, and I nor the medical staff that was on duty, was able

to push the hernia back into place. In a period of about 3 hours the hernia grew to the size of a softball and was continuing to grow." The medical staff called the doctor who advised the jail to transport Plaintiff to the nearest emergency room. Plaintiff was taken to a regional medical center in Madisonville, Kentucky, where he underwent emergency surgery. The physician stated that Plaintiff "should have had the surgery when I was first diagnosed as having a hernia. I was told that I could have easily died. That it was very serious. When I walked I had to hold it in place." He states that the emergency room and doctor fees were charged to him[,]" which "was the only way the jail would allow me the treatment."

Plaintiff also states that during his incarceration he was the victim of abuse by the HCDC staff in the form of staff "purposefully discussing my case with inmates of the Detention Center. This unethical behavior on the part of the [HCDC] staff was meant to impugn my character, constituting cruel and unusual punishment also."

Plaintiff further states that Defendant Gibson, whom he describes as "representing the Madisonville Police Department," has "knowingly and willingly produced libelous, malicious, and fraudulent information to his superiors, the Commonwealth of Kentucky, the Court, and most of all the news media . . . as truth and facts only." He states that Defendant Gibson intended to defame and attack his character. He says that Defendant Gibson took these actions to force Plaintiff into a plea agreement, "not to mention fanning the fire of public opinion raising doubt concerning the ability to seat a fair and impartial jury." Plaintiff states, "I ask that Officer Gibson and the information (evidence) gleamed from his inquires be severely admonished and suppressed, his conduct has done irreparable damage to my character and constitutes cruel and unusual punishment."

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of "release from illegal detention, expungement of records."

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

5

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

**A.     Claims against Defendant Massamore**

Plaintiff sues Defendant Massamore, whom he states is the Commonwealth Attorney prosecuting the case against him, in his individual and official capacity. First, with regard to the official-capacity claim, as a state official sued in his official capacity for damages, Defendant Massamore is absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Kentucky v. Graham*, 473 U.S. 159, 169; *Boone v. Kentucky*, 72 F. App'x 306, 307 (6th Cir. 2003) ("Boone's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the state and also barred by the Eleventh Amendment."). Second, a state official sued in his official capacity for damages is not a "person" subject to suit within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Consequently, the

6

official-capacity claim against Defendant Massamore for damages will be dismissed for seeking monetary relief from a defendant immune from such relief and for failure to state a claim.

The Court will now review the claims against Defendant Massamore in his individual capacity.

### 1. Speedy trial, change of venue, and excessive bail

Plaintiff claims that Defendant Massamore denied him the right to a speedy trial and a change of venue and subjected him to excessive bail. However, these claims relate to Defendant Massamore's conduct in his role as an advocate. To the extent a prosecutorial defendant was acting in his role as an advocate, *i.e.*, initiating and pursuing a criminal prosecution and presenting the Commonwealth of Kentucky's case, he enjoys absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976); *see also Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (holding that prosecutors were absolutely immune from claim alleging that they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury). Moreover, federal courts have no general power to compel action by state officers in the performance of their duties. *More v. Clerk, DeKalb Cnty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam); *Haggard v. Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970). Therefore, Plaintiff's claims against Defendant Massamore concerning a speedy trial, change of venue, and excessive bail will be dismissed for failure to state a claim.

In addition, Plaintiff states that the criminal case against him is still pending. Therefore, even if these claims were not barred by prosecutorial immunity, this Court would abstain from

7

interfering with Plaintiff's pending state criminal case under *Younger v. Harris*, 401 U.S. 37, 44-45 (1971). *See Kelm v. Hyatt*, 44 F.3d 415, 419-21 (6th Cir. 1995).

## 2. Libel

Plaintiff also brings a state-law libel claim. He states that "the Commonwealth has knowingly allowed the libelous, malicious, and fraudulent information to be published" in the media." This is a legal conclusion which is not entitled to the assumption of truth. *Tackett*, 561 F.3d at 488 (holding that "the district court need not accept a 'bare assertion of legal conclusions'") (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Further, under Kentucky law, a libel claim requires a showing that "(1) a defamatory statement was made; (2) of or concerning the Plaintiff; (3) which was published to a third party; and (4) which caused injury to the Plaintiff's reputation." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541 (W.D. Ky. 2005); *see also Youngblood v. City of Paducah*, No. 5:10-CV-206-R, 2012 U.S. Dist. LEXIS 201310, at *13-14 (W.D. Ky. Feb. 17, 2012). A defendant may avoid liability for a libel claim by means of privilege, where the comments were "'made in good faith, without actual malice, by one who believes he has a duty or an interest to a person with a corresponding duty or interest.'" *Lewis v. Laurel Cnty. Sheriff's Dep't*, No. 09-CV-280-GFVT, 2011 U.S. Dist. LEXIS 88858, 2011 WL 3475370, at *7 (E.D. Ky. Aug. 8, 2011) (quoting *Brewer v. Amer. Nat'l Ins. Co.*, 636 F.2d 150, 154 (6th Cir. 1980)). "Remarks by police officers to members of the press about a criminal investigation are entitled to this qualified privilege because 'communicating to the public about a criminal investigation [is] a matter of interest to the community and the public at large.'" *Youngblood*, 2012 U.S. Dist. 201310, at *14 (quoting *Lewis*, 2011 U.S. Dist. LEXIS 88858, at *7).

8

Plaintiff provides no facts surrounding his libel claims, including what statements were allegedly made, when or to whom they were made, what injury allegedly resulted, or on what facts he relies to contend they are untrue. Morever, Plaintiff does not even state that Defendant Massamore himself engaged in this conduct.

### 3. Cruel and unusual punishment

Further, under the heading of his complaint concerning Defendant Massamore, Plaintiff also claims that he was subjected to cruel and unusual punishment and cites various conditions of his confinement. However, he fails to state how Defendant Massamore is responsible for these conditions. "Congress did not intend § 1983 liability to attach where causation is absent." *Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). A § 1983 complaint must allege that specific conduct by the defendant was the proximate cause of the constitutional injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986). To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Deaton v. Montgomery Cnty.*, 989 F.2d at 889. Moreover, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Plaintiff fails to allege that Defendant Massamore caused him any harm in connection with his cruel-and-unusual-punishment claim.

Based on the foregoing, the individual-capacity claims against Defendant Massamore will be dismissed for failure to state a claim upon which relief may granted.

**B.      Claims against Defendant Blue**

Plaintiff sues Defendant Blue, the HCDC Jailer, in his official capacity only. Plaintiff's official-capacity claim against Defendant Blue is actually against his employer, Hopkins County. *Kentucky v. Graham*, 473 U.S. at 166 (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992).

   **1.      Placement in segregation, isolation, and protective custody and access to telephone and attorney**

With regard to Plaintiff's claims concerning placement in a segregation, isolation, or protective custody, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet. Ky. Rev. Stat. § 197.065. "Nor does the transfer of a prisoner from one unit to another within the same prison implicate such a right." *Odom v. Caruso*, No. 2:10-cv-31, 2010 U.S. Dist. LEXIS 120261, at *7 (W.D. Mich. Nov. 12, 2010). Moreover, "'[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he

10

was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Plaintiff does not allege that he was denied basic human needs while in segregation, isolation, or protective custody. Therefore, his claims regarding placement in segregation, isolation, and protective custody will be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff also states that while in isolation he was not allowed access to the telephone for 23 hours a day, 7 days a week and that he was denied "regular access to legal counsel due to the phone issue." An inmate has no right to unlimited telephone use. *See Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Brown v. Long*, No. 96-5567, 1997 U.S. App. LEXIS 2681, at *1 (6th Cir. Feb. 12, 1997) ("[prisoner] plaintiff has no constitutional right to unlimited access to a telephone, particularly during his confinement in segregation"). Moreover, while Plaintiff alleges that this limited his access to his attorney, Plaintiff does not allege that he did not have other means of communicating with his attorney. The Court finds that Plaintiff has not alleged a constitutional violation with regard to access to the phone or his attorney while in segregation, isolation, or protective custody, and these claims will be dismissed for failure to state a claim.

### 2. Access to law library

Plaintiff also alleges that he was denied access to the law library during his time in insolation. There is no constitutional right to access to a law library. There is a constitutional right to access to courts, but Plaintiff does not allege any actual prejudice to any litigation. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Having failed to allege any hindrance in his efforts to pursue a non-frivolous legal claim, Plaintiff fails to state an access-to-courts claim.

### 3. Recreation

Plaintiff also alleges that he was denied recreation. While a total denial of recreational opportunities may violate the Constitution, *Walker v. Mintzes*, 771 F.2d 920, 927-28 (6th Cir. 1985), the Sixth Circuit has not defined a minimum standard of recreation for adult prisoners. *Rodgers v. Jabe*, 43 F.3d 1082, 1087-88 (6th Cir. 1995). Notably, Plaintiff has not alleged that the denial of recreation caused him any physical injury or placed him at substantial risk of serious harm. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.") Because Plaintiff does not allege he suffered any injury from the alleged inadequate recreation, no cognizable § 1983 claim has been stated.

### 4. Staff discussion of his charges

Plaintiff also states that HCDC staff discussed his case with other inmates, which impugned his character and constituted cruel and unusual punishment. First, Plaintiff does not allege that Defendant Blue himself engaged in the conduct. As stated above, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d at 300. "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x at 634. However, even if Plaintiff had alleged that Defendant Blue took part in this conduct, harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute

punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 10312, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Therefore, Plaintiff's claim against Defendant Blue concerning discussion of his case by HCDC staff will be dismissed.

**5. Denial of religious services and medical care**

Upon review, the Court will allow Plaintiff's official-capacity claims to proceed against Defendant Blue alleging denial of religious services and denial of medical treatment based on allegations of denial of medications and treatment for a hernia.

**C.     Claims against Defendant Gibson**

Plaintiff sues Defendant Gibson in his individual and official capacity. He alleges that Defendant Gibson "produced libelous, malicious, and fraudulent information to his superiors, the Commonwealth of Kentucky, the Court, and most of all the news media . . . as truth and facts only." This is a legal conclusion which the Court is not required to accept as true. *Tackett*, 561 F.3d at 488 (holding that "the district court need not accept a 'bare assertion of legal conclusions'") (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d at 1109). As stated above, in the context of a libel claim, police officers may avoid liability by means of privilege. "Remarks by police officers to members of the press about a criminal investigation are entitled to this qualified privilege because 'communicating to the public about a criminal investigation [is] a matter of interest to the community and the public at large.'" *Youngblood*, 2012 U.S. Dist. 201310, at *14 (quoting *Lewis*, 2011 U.S. Dist. LEXIS 88858, at *7). Plaintiff provides no facts

surrounding his libel claims, including what statements Defendant Gibson allegedly made, when or to whom they were made, what injury allegedly resulted, or on what facts Plaintiff relies to contend they are untrue. Therefore, Plaintiff's claim against Defendant Gibson in his individual and official capacity will be dismissed for failure to state a claim.

Moreover, to the extent Plaintiff requests that the "[]evidence[] glea[n]ed from [Defendant Gibson's] inquiries be severely admonished and suppressed," doing so would require the Court to interfere in Plaintiff's ongoing state-court criminal case. "[A] federal court should not interfere with a pending state criminal proceeding except in the rare situation where an injunction is necessary to prevent great and immediate irreparable injury." *Fieger v. Thomas*, 74 F.3d 740, 743 (6th Cir. 1996) (citing *Younger v. Harris*, 401 U.S. at 44-45). "*Younger* abstention in civil cases requires the satisfaction of three elements. Federal courts should abstain when (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997).

Plaintiff has a pending criminal case. The state has an important interest in adjudicating that criminal case. In light of the available avenues through which to raise a constitutional challenge in a pending case, this Court will not interfere with an on-going Kentucky state court proceeding. While federal court relief might be possible in the future should state court remedies prove unavailable, Plaintiff has failed to show that the state courts are unable to protect his interests at this time.

**D.     Claims against ACH**

Upon review, the Court will allow Plaintiff's claims to proceed against ACH for denial of medical treatment based on allegations of denial of medications and treatment for a hernia.

**E.     Injunctive relief**

In his prayer for relief, Plaintiff requests release from custody and expungement of his records. However, these are not available remedies under § 1983. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

As to his request for expungement of his records, he does not indicate what "records" he seeks to have expunged or why. Moreover, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, should any expungement necessarily imply the invalidity of his current confinement or its duration, § 1983 relief is unavailable. Consequently, Plaintiff's claims for equitable relief relating to release and expungement under § 1983 will be dismissed.

**IV.**

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiff's individual and official-capacity claims against Defendant Massamore are **DISMISSED** pursuant to 28 U.S.C. §§ 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary damages against a defendant immune from such relief.

**IT IS FURTHER ORDERED** that the individual and official-capacity claims against Defendant Gibson and Plaintiff's claims for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that all of the official-capacity claims against Defendant Blue, except for his claims of denial of religious services and medical treatment, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Scheduling Order governing the development of the claims that have been permitted to proceed.

Date: July 24, 2013

*Joseph H. McKinley*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Hopkins County Attorney
4414.010