**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**
**CIVIL ACTION NO. 4:13CV-10-JHM**

**CECIL WALKER SALYERS, JR.**
**AKA WALLY SALYERS**                                                                   **PLAINTIFF**

**v.**

**JOE BLUE** *et al.*                                                                   **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on pending motions for summary judgment by all parties.

Defendant Advanced Correctional Healthcare, Inc. (ACH) filed a renewed motion for summary

judgment (DN 43), by counsel; Defendant Joe Blue, the Jailer of the Hopkins County Jail (HCJ),

filed a renewed motion for summary judgment (DN 45), by counsel; and Plaintiff filed a *pro se*

motion for summary judgment (DN 47).  For the following reasons, the Court will grant

Defendants' motions and deny Plaintiff's motion.

**I.**

Plaintiff was incarcerated at HCJ at the time pertinent to the complaint.  The complaint

alleged a variety of claims concerning Plaintiff's prosecution and incarceration.  Upon initial

review of the complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed a number of claims

and allowed Plaintiff's 42 U.S.C. § 1983 official-capacity claim against Defendant Joe Blue for

denial of medical treatment and denial of religious services and his § 1983 claim against

Defendant ACH for denial of medical treatment to proceed for further development.

In the verified complaint, Plaintiff alleged that the medical staff "was made aware of my

severe physical illness, 2 heart attacks," which occurred prior to his incarceration.  He stated that

this condition was still "being treated as a life threatening issue" when he became incarcerated.

He stated that although he informed the medical staff of his need for certain medications, specifically Plavix, he did not receive these medications.  Plaintiff further stated in the complaint that he developed a hernia in his groin on October 19, 2011.  According to the complaint, he was seen by medical staff who referred him to a doctor.  He saw a doctor on November 2, 2011, who confirmed that it was a hernia.  However, he stated that he was denied treatment for the hernia at that time.  He stated that he endured pain for almost a year.  Plaintiff stated that on October 13, 2012, the hernia "got stuck, and I nor the medical staff that was on duty, was able to push the hernia back into place.  In a period of about 3 hours the hernia grew to the size of a softball and was continuing to grow."  According to the complaint, the medical staff called the doctor who advised the jail to transport Plaintiff to the nearest emergency room.  Plaintiff was taken to a regional medical center in Madisonville, Kentucky, where he underwent emergency surgery.

With regard to Plaintiff's claim against Defendant Blue that he was denied religious services, Plaintiff stated in the complaint that he was housed in isolation and was denied church services.  He states that he was denied "spiritual counseling, church, the Great Banquet, Communion, etc."

Defendants argue in their motions for summary judgment that Plaintiff received proper medication for heart-related illnesses and received adequate and prompt treatment for his hernia.  Defendants' motions for summary judgment are supported by a number of exhibits.  Defendants attach Plaintiff's Intake Medical Screening Questionnaire, dated December 9, 2010, the day Plaintiff entered HCJ.  Where the questionnaire asked about recent medical conditions, Plaintiff's response was "July Heart Attack."  He did not indicate any other medical conditions on the questionnaire.  Defendant Blue also attaches an Admission Data/History and Physical Form from December 20, 2010, from Plaintiff's admissions physical where he informed medical

staff that he had previously been hospitalized at St. Thomas Heart Hospital in Murfreesboro, Tennessee.  Both Defendants ACH and Blue attach Plaintiff's Medication Administration Records showing that Plaintiff was given two medications for maintenance of his heart-related issues, a daily Aspirin beginning on December 27, 2010, and a prescription for Atenolol, a blood pressure medication, beginning on January 9, 2010.  The Medication Administration Records also show that Plaintiff was later prescribed Simvastatin, a cholesterol maintenance medication, beginning on July 9, 2011.  According to the Medication Administration Records, these medications, along with other medications prescribed to Plaintiff as needed, were continued until Plaintiff was transferred from the HCJ to the Roederer Correctional Complex in July 2014.  Defendant Blue attaches Plaintiff's Blood Pressure Record and Blood Sugar Flow Sheet, which show that Plaintiff's blood pressure and blood sugar levels were checked regularly.

According to records attached to Defendants' summary-judgment motions, Plaintiff had visits to the HCJ "Chronic Clinic" on October 18, 2011, and February 9, 2012, and made no complaints concerning a hernia on either date.  Plaintiff did complain of a hernia in a Chronic Clinic visit on August 10, 2012.  The medical notes from that date show that Plaintiff had a lower abdominal hernia, "[no] incarceration, soft."  A Medical History Report from that date also indicates that Plaintiff had a "lower abdominal hernia, no incarceration, soft."  On October 13, 2012, Plaintiff completed a Sick Call Request Form complaining of the hernia.  The Medical Progress Note and Incident Report from that date show that Plaintiff was evaluated by Nurse Banks, who performed a physical examination and contacted the site physician, Dr. Townsend, who instructed jail and medical staff to have Plaintiff taken to the emergency room.  According to these records, Plaintiff was admitted on that date to Trover Health System in Madisonville, Kentucky, where he underwent surgery, specifically an inguinal hernia repair with mesh.

Attachments show that that Plaintiff was discharged on October 15, 2012, in stable condition and returned to the HCJ with discharge instructions.  Narrative Progress Notes made by medical staff show that Plaintiff was monitored by jail staff when he returned.  A Medical Progress Note from October 24, 2012, indicates that Plaintiff's surgical staples were removed.  The records indicate no further complaints by Plaintiff concerning his hernia.

With regard to Plaintiff's claim against Defendant Blue that he was denied religious services, Defendant Blue attaches Plaintiff's Facility Admission Report which shows that he described his religion as "Orthodox Christianity" when he entered HCJ.  Defendant Blue also furnishes an affidavit in which he states as follows:

> At all times while he has been inmate at the Hopkins County Jail, Mr. Salyers has been allowed to correspond with religious persons, read religious materials, have visits and phone calls with religious persons, pray and/or meditate, conduct his own private religious service within his cell, possess medallions up to two inches in diameter, and participate in communion within his cell.

Plaintiff filed a response to the motions for summary judgment.  Plaintiff states that he "unequivocally oppose the Defendants desparate attempts to sabotage the Plaintiff's case against them by misrepresenting the facts and trying to hide behind laws that are not appropriate in this action, thus it cannot be used as a shield to hide the abuse of authority, the inhumane treatment of individuals placed in and/or under their care and the total lack of concern by disregarding an individuals constitutional rights and the laws of this country . . . ."  Plaintiff quotes a footnote from *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), quoting 42 U.S.C. § 1983.  He states, "Therefore the Plaintiff believes the Defendants should be held accountable for all their actions including but not limited to their employees, staff member, and/or partners, all of which represents the Defendants, by way of chain of command, at said facility . . . ."  Plaintiff raises no specific fact-based arguments.  He attaches no exhibits in support of any argument in his

response.  However, he states that "when the Court thoroughly examines all the evidence that's been presented by the Plaintiff within the complete discovery package, which consist of all documentation, including the Plaintiff's memorandum of law, it will quickly realize that there is more than enough material facts and a genuine dispute" of facts.

On the same date he filed his response to Defendants' summary-judgment motions, Plaintiff filed his own motion for summary judgment which largely reiterates his response and contains no fact-specific arguments or attachments.  The Court reviewed the documents provided by Plaintiff in DN 35, to which the Court presumes Plaintiff is referring in his response and summary-judgment motion when he refers to a "discovery package."[1]  A review of the medical records contained in Plaintiff's documents reveals only one medical record relevant to the claims in this suit that was not attached to Defendants' summary-judgment motions.  Plaintiff produced an October 27, 2011, Sick Call Request form submitted by Plaintiff in which he states, "I think I have a hernia that happened about a month ago and is getting worse."  A response by medical staff states, "I/M Salyers you are on the list to see the MD."[2]

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1]Plaintiff also refers to his "memorandum of law," which the Court presumes is Plaintiff's 81-page filing (DN 38-1) containing irrelevant personal information, a recitation of events during his incarceration, many of which are irrelevant, and legal argument.  The Court already addressed the filing in DN 53.  The Court will not consider this unsworn, self-serving filing in ruling on the motions for summary judgment. The Sixth Circuit has consistently held that "a court may not consider unsworn statements when ruling on a motion for summary judgment."  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970)).

[2]While Plaintiff states in his complaint that he saw a doctor who confirmed that he had a hernia on November 2, 2011, he provided no medical record concerning this visit.

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### III.

**A. Municipal or corporate liability**

Only Plaintiff's official-capacity claim against Defendant Blue survived initial review. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's

6

official-capacity claim against Defendant Blue is, therefore, actually a claim against Hopkins

County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit

against county clerk of courts in his official capacity was equivalent of suing clerk's employer,

the county). When a § 1983 claim is made against a municipality, this Court must analyze two

distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if

so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*,

*Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the

municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in

other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v.*

*City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is

designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and

thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting

*Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is

a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889

(6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the

city itself and show that the particular injury was incurred because of the execution of that

policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan*

*v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v.*

*Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983."  *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of County Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

For Plaintiff's claim against Defendant ACH, a private corporation, this same analysis applies to Plaintiff's § 1983 claims against it.[3]  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").  Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training."  *Id.*; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

In the instant case, Plaintiff has produced no evidence of any policy or custom on the part of Hopkins County or ACH that led to the alleged denial of medical treatment or denial of religious services.  Nor has Plaintiff produced any evidence of inadequate training by either entity.  Plaintiff's complaint appears to allege isolated occurrences affecting only him.  *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible.").  Accordingly, Defendants are entitled to summary judgment for this reason.

---

[3]The Sixth Circuit has held that "[i]t is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)).

**B.  Constitutional violation**

However, even if Plaintiff could establish a municipal or ACH corporate policy, Plaintiff must still establish that his harm was caused by a constitutional violation.

**1.  Denial of medical treatment**

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. at 104); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).  A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component.  The objective component requires the existence of a sufficiently serious medical need.  *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).  Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 837-47).  Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Terrance*, 286 F.3d at 843 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).  Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness.'" *Id*. at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a. Heart-related medications

Here, with regard to Plaintiff's claims that he was denied proper medications for his history of heart attack, the evidence submitted by Defendants demonstrates that Plaintiff received medications for his heart condition.  When he entered HCJ, Plaintiff was evaluated by medical staff, and he reported his then-recent heart attack.  He was given a physical shortly after arriving at HCJ.  He was given aspirin and Atenolol for his heart-related medical issues within a month of his arrival at HCJ.  He later was prescribed Simvastatin to manage his cholesterol, as well. Plaintiff's blood pressure and blood sugar levels were monitored regularly, and he was seen in the HCJ Chronic Clinic.

The standard applied in reviewing the actions of prison doctors and medical staff in this type of case is deferential.  *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).  Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Furthermore, a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate.  *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).  Here, Plaintiff undisputedly received medical treatment for heart-related issues.  Plaintiff essentially disputes that he did not receive his preferred medications, specifically Plavix.  Such disagreement does not rise to the level of a constitutional violation.  *Westlake*, 537 F.2d at 860 n.5.  Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that he was denied proper treatment for his heart ailment for this reason, as well.

### b. Hernia

According to the records attached to Defendants' summary-judgment motions and those produced by Plaintiff in his "discovery package," Plaintiff first reported that he had a hernia in a Sick Call Request on October 27, 2011, stating, "I think I have a hernia that happened about a month ago and is getting worse." Construing the verified complaint as true, Plaintiff was seen by a doctor on November 2, 2011, who diagnosed him as having a hernia. Medical records from visits to the HCJ Chronic Clinic on October 18, 2011, and February 9, 2012, show that he made no complaints regarding a hernia on those dates. There are no other records to show that Plaintiff was complaining of his hernia until an August 10, 2012, visit to the Chronic Clinic. The medical note from that date indicates that Plaintiff had a soft, lower abdominal hernia without incarceration. Plaintiff next completed a Sick Call Request form on October 13, 2012, complaining of the hernia. The records show that he was transported to the emergency room and underwent surgery for the hernia that day.

Upon review of the medical records provided, the Court concludes that Plaintiff cannot establish that he had a sufficiently serious medical need based on the October 27, 2011, Sick Call Request, especially in light of the fact that Plaintiff has produced no evidence that he complained of a hernia again until August 10, 2012. Plaintiff was examined by medical staff on that date in the Chronic Clinic where they noted his condition and presumably made the medical judgment that immediate action was not necessary. The Court will not second guess this medical judgment now. *See Westlake*, 537 F.2d at 860 n.5. Plaintiff next complained about the hernia on October 13, 2012, and was transported to a hospital and received surgery to repair it that day. While Plaintiff undisputedly had a serious medical need at that time, Plaintiff received medical

treatment for his hernia. His dispute is, therefore, with the adequacy of the treatment, which this Court will not second guess. *See Westlake*, 537 F.2d at 860 n.5.

Moreover, to the extent that Plaintiff argues that Defendants delayed in providing him treatment for his hernia, that claim does not rise to the level of a constitutional violation. A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Examples of the latter branch include "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless." *Id.* In such circumstances, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill*, 40 F.3d at 1188)).

Here, Plaintiff presents no medical evidence that any delay in treatment for his hernia had a detrimental effect. Nothing in the record even suggests that Plaintiff required surgery because of a delay in treatment. Plaintiff has not produced any evidence of any further complaints concerning his hernia subsequent to the surgery. While Plaintiff states in his complaint that he was experiencing pain for almost a year before he had surgery, he provides no medical records

12

showing that he complained of pain to the medical staff during this time.  In fact, the medical

records from his visits to the HCJ Chronic Clinic on October 18, 2011, and February 9, 2012,

show that he made no complaints concerning a hernia on those dates.

For these reasons, Defendants are entitled to summary judgment on this claim, as well.

### 2. Denial of religious services

In addition, Defendant Blue moves for summary judgment on Plaintiff's claim that he

was denied religious services while housed in isolation.  Defendant Blue does not dispute that

Plaintiff was not permitted to participate in group religious functions, such as church with other

inmates, because of restrictions placed on him while in protective custody.  However, supported

by an affidavit, Defendant Blue contends that Plaintiff was allowed to correspond with religious

persons, read religious materials, have visits and phone calls with religious persons, pray and/or

meditate, conduct his own private religious service within his cell, possess medallions up to two

inches in diameter, and participate in communion within his cell.  Plaintiff does not directly

address these arguments in his response and submits no evidence to refute Defendant Blue's

affidavit.

The First Amendment prevents the government from prohibiting or excessively curtailing

the free exercise of religion.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Plaintiff does have a

constitutional right to practice his religion; however, because Plaintiff is a prisoner, Defendant

Blue need only show that regulations impinging on his constitutional right are reasonably related

to a legitimate penological interest.  *See Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011)

(citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Denying congregate religious services in the more secure segregation or isolation unit

serves a legitimate penological interest in security.  *See Walker v. Mintzes*, 771 F.2d 920, 929

13

(6th Cir. 1985) ("The specific state interests here are the prison administrators' responsibility for security and discipline.  They must ensure the safety of all inmates, prison employees, and the public at large.").  "When determining whether a particular restriction is reasonably related to prison security, the court should give considerable deference to prison administrators' expertise." *Id.* at 930.  Moreover, Defendant Blue has shown that while Plaintiff was in isolation, he had alternative means of exercising religion as he was allowed to correspond with religious persons, read religious materials, have visits and phone calls with religious persons, pray and/or meditate, and engage in other private religious practices.  Plaintiff does not refute these facts and, therefore, fails to demonstrate a First Amendment violation.  *See Arauz v. Bell*, 307 F. App'x 923, 929 (6th Cir. 2009) ("'The courts have consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long as the inmates' rights of conscience are not infringed and they can request individual religious counseling.'") (quoting *Walker v. Mintzes*, 771 F.2d at 930).

Therefore, Defendant Blue is entitled to summary judgment on this claim for this reason, as well.

## IV.

For the foregoing reasons, **IT IS ORDERED** that the renewed motion for summary judgment by Defendant ACH (DN 43) and the renewed motion for summary judgment by Defendant Blue (DN 45) are **GRANTED**.

14

**IT IS FURTHER ORDERED** that the motion for summary by Plaintiff (DN 47) is

**DENIED as moot**.

A separate Judgment will be entered.

Date:   August 27, 2015

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.010

15